**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In Re:  Express Mobile Diagnostic Services, LLC, | ) | Case No. 25-20255-GLT |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |

**DISCLOSURE STATEMENT
TO ACCOMPANY AMENDED PLAN DATED FEBRUARY 20, 2026**

Debtor furnishes this disclosure statement to creditors in the above-captioned matter pursuant to Bankruptcy Code §1125 to assist them in evaluating Debtor's proposed Chapter 11 plan, a copy of which is attached hereto. Creditors may vote for or against the plan of reorganization. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing time. The Court will schedule a hearing on the plan pursuant to 11 U.S.C. §1129.

Address for return of ballots:

Brian C. Thompson, Esquire
Thompson Law Group, P.C.
301 Smith Drive, Suite 6
Cranberry Township, PA 16066

**I.      Background**

**1.      Name of Debtor**

Express Mobile Diagnostic Services, LLC

**2.      Type of Debtor**

Debtor is a business operating in the Commonwealth of Pennsylvania.

**3.      Debtor's Business or Employment**

Debtor is a corporation engaged in the provision of mobile diagnostic equipment services, including X-ray, EKG, echocardiogram, and ultrasound, at the direction of licensed physicians.

1

Debtor currently operates in six states (Pennsylvania, Ohio, West Virginia, Arkansas, Kentucky, and Oklahoma) is headquartered in Greensburg, PA. At the time of filing, Debtor employed approximately 70 individuals.  Debtor now has approximately 68 employees and has downsized its operation to become more profitable and support a feasible reorganization.

Debtor examined every location to determine profitability, and as a result, Debtor closed its operations in the State of Indiana to focus on more profitable locations.  Also, while Debtor still operates in the Commonwealth of Kentucky, Debtor closed their physical office location to reduce rent and other expenses to make its Kentucky operations more profitable.

In addition to reducing expenses, Debtor also anticipate an increase in revenue.  Debtor collects essentially four types of fees (1. Examination fee; 2. Read fee; 3. Transportation fee; and 4. Equipment set-up fee.  Debtor examined all facility contracts to determine if pricing increases where appropriate where pricing is not regulated by Medicare/Medicaid.  Also, Debtor anticipates legislation to be passed wherein Debtor would be permitted to charge some of these fees for reimbursement such as ultraspound transportation, where Debtor is currently not able to seek reimbursement of those fees from Medicare/Medicaid.  While speculative, Debtor believes that this change in legislation could raise annual revenue up to an estimated $1,000,000.00 annually.  Debtor's current revenue from Medicare/Medicaid is approximately 60% to 65%.

4.      **Date of Chapter 11 Filing:**

January 31, 2025

5.      **Events that Caused the Filing:**

The Debtor initiated this case under Subchapter V to restructure its secured debts after an extended period of difficulty collecting receivables, combined with increased cost of operations and a decrease in payouts for services rendered

6.      **Anticipated Future of the Debtor:**

2

Debtor will continue to operate in conjunction with a confirmed Plan of reorganization. The Plan is to be implemented by the reorganized Debtor through improved collection of receivables, together with a reduction in costs and expenses that include closing underperforming locations and reduction in leased fleet vehicles over time. Debtor closed its location in Indiana, and closed its physical office in Kentucky in order to reduce rental expenses.

7.      **Summarize all Significant Features of the Plan Including When and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained By Secured Creditors or Granted to Any Creditor Under the Plan**

A. Class 1, Administrative Claims (Unimpaired).

Claims shall be paid in full as of the Plan effective date, if possible, or as soon thereafter as practicable.  Other post-petition administrative claims, including counsel fees and quarterly fees to the United States Trustee will be paid as they become due from time to time and with prior Court approval if necessary.

B. Class 2, Secured Priorty Claims (Impaired).

a.      Northwest Bank's allowed Claim No. 16 in the amount of $347,870.21 is secured by substantially all of the Debtor's personal property, including Inventory, Equipment, Accounts and Other Rights to Payment, Instruments and Chattel Paper, General Intangibles, etc. ("Line of Credit Collateral") and shall be paid over five and one-half (5 1/2) years at 8% interest with monthly payments of $4,220.63, with a balloon payment of all amounts due under the terms of the loan documents five and one-half (5 1/2) years after the effective date of the Plan.

b.      Northwest Bank's allowed Claim No. 17 in the amount of $76,986.33 is secured by a Purchase Money Security Interest in a 1417WCC: Rayence 14x17 Wireless DR Flat Panel Detector S/N: CII019390165; a Source Ray SR 130 X-Ray System, Portable S/N: 2729; a TI-BA 14HK701G-WP LG 14x17" Cesium Wireless DR System Model: 14HK701G S/N: 910KCZPPW893; a TI-BA 14HK701G-WP LG 14x17" Cesium Wireless DR System Model: 14HK701G S/N: 910KCCVPW891; a TI-BA 14HK701G-WP LG 14x17" Cesium Wireless DR System Model: 14HK701G S/N: 910KCYQPW890; a TI-BA 14HK701G-WP LG 14x17" Cesium Wireless DR System Model: 14HK701G S/N:

910KCHEPW889; a TI-BA 14HK701G-WP LG 14x17" Cesium Wireless DR System Model: 14HK701G S/N: 910KCQXPW892; a TI-BA 14HK701G-WP LG 14x17" Cesium Wireless DR System Model: 14HK701G S/N: 905KCXMN1290; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing and substantially all of the Debtor's personal property, including Inventory, Equipment, Accounts and Other Rights to Payment, Instruments and Chattel Paper, General Intangibles, etc. ("Equipment Loan Collateral" and collectively with the Line of Credit Collateral, "Collateral") shall be paid over five and one-half (5 1/2) years at 8% interest with monthly payments of $619.15, with a balloon payment of all amounts due under the terms of the loan documents five and one-half (5 1/2) years after the effective date of the Plan.

c.       Northwest Bank shall maintain its liens on the Collateral and all loan documents shall remain in full force and effect until its claims are paid in full.

d.       Nothing herein or in the Plan shall affect, alter, or limit the liability of any non-debtor obligors for the debt due to Northwest Bank under the terms of the loan documents.

e.       Nothing herein or in the Plan, including but not limited to the provisions of Section 7.5 of the Plan, shall alter the default provisions of Northwest Bank's loan documents and the provisions of Section 7.5 of the Plan shall not apply to Northwest Bank.

f.       Once the Plan becomes effective, the Debtor shall promptly file a notice of the occurrence of the effective date.

C. Class 3, Secured Claims (Impaired).

The secured claim of United States Small Business Administration secured against accounts receivable and future earnings in the amount of $24,765.65 shall be paid over 30 years at 8% interest with monthly payments of $181.72.

D. Class 4 General Unsecured Claims (Impaired).

General Unsecured Claims will be paid pro rata on an annual basis from revenue generated from operations from the funds deisgnated for the general unsecured pool of $25,000.00

4

E. Class 5 De Minimis Claims to be Paid in Full (Unimpaired).

De Minimis Claims of $1,200.00 or less shall be paid in full on the effective date of the plan in the total amount of $1,964.23.

**8.      Are All Monthly Operating Statements Current and on File with the Clerk of Court?**

Yes __X__   No _____

**If Not, Explain:**

**9.      Does the plan provide for releases of non-debtor parties? Specify which parties and terms of release.**

No.

**10.      Identify all executory contracts that are to be assumed, assumed and assigned, or rejected.**

All executory contracts listed on the attached and filed Schedule G are assumed.

**11.      Has a bar date been set?**

Yes, July 30, 2025 for governmental units and June 2, 2025 for all other creditors or parties in interest.

**12.      Specify property that will be transferred subject to 11 U.S.C. §1146.**

None.

**II.      Creditors**

A.      Secured Claims (Based on filed Proofs of Claims).

| Creditor | Total Amount Owed (Estimated or claimed) | Arrearages | Type of Collateral Priority of Lien | Disputed Liquidated Unliquidated | Will Liens be Retained Under the Plan (Y) or (N) |
|---|---|---|---|---|---|
| U.S. Small Business Administration | $24,765.65 | $0.00 | Accounts Receivable, Future Earnings | | Yes |
| Northwest Bank | $347,071.21 | $0.00 | Medical equipment | | Yes |
| Northwest Bank | $76,986.33 | $0.00 | Medical equipment | | Yes |
| Enterprise FM Trust | $35,344.83 | $0.00 | Accounts Receivable, Future Earnings | | Yes |

B.      Unsecured Claims

    1.      Amount Debtor Scheduled (Disputed and Undisputed)     $1,552,481.29
    2.      Amount of Unscheduled Unsecured Claims[1]     $
    3.      Total Claims Scheduled or Filed     $484,168.02
    4.      Amount Debtor Disputes (Investigation not complete)     $
    5.      Estimated Allowable Unsecured Claims     $484,168.02

C.      Other Classes of Creditors - Priority

    1.      Amount Debtor Scheduled (Disputed and Undisputed)     $ 0.00
    2.      Amount of Unscheduled Unsecured Claims     $0.00
    3.      Total Claims Scheduled of Filed     $0.00
    4.      Amount Debtor Disputes     $0.00
    5.      Estimated Allowable Unsecured Claims     $0.00

D.      Other Classes of Interest Holders

    1.      Amount Debtor Scheduled (Disputed and Undisputed)     $0.00
    2.      Amount of Unscheduled Unsecured Claims     $0.00
    3.      Total Claims Scheduled of Filed     $0.00
    4.      Amount Debtor Disputes     $0.00
    5.      Estimated Allowable Unsecured Claims     $0.00

III.    **Assets**

| Assets | Value | Basis for Value Priority of Lien | Name of Lienholder (if any)  (Fair Market Value/Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Northwest Bank checking operating acct | $0.00 | Value as of filing date | Security Agreement/UCC | $0.00 |
| Accounts receivable over 90 days payroll acct | $11,675.00 | Value as of filing date | UCC | $0.00 |
| Accounts receivable under 90 days | $314,379.00 | Value as of filing date | UCC | $0.00 |

---

[1] Includes a.) unsecured claims filed by unscheduled creditors; b.) that portion of any unsecured claim filed by a scheduled creditor that exceeds the amount debtor scheduled; and c.) any unsecured portion of any secured debt not previously scheduled.

| Office furniture | $1,000.00 | Value as of filing date | Security Agreement/UCC | $0.00 |
| Computers and other office equipment | $5,000.00 | Value as of filing date | Security Agreement/UCC | $0.00 |
| Ultrasound equipment | $25,000.00 | Value as of filing date | Security Agreement/UCC | $25,000.00 |
| X-Ray equipment | $114,100.00 | Value as of filing date | Security Agreement/UCC | $114,100.00 |

1. Are any assets which appear on Schedule A or B of the bankruptcy petition or subsequent amendments not listed above?
    No.

2. If so, identify asset and explain why asset is not in estate:

3. Are any assets listed above claimed as exempt?

    No.

## IV.    **Summary of Plan**

1. Effective Date of Plan:  Within 30 days from the date the Order confirming the Plan is entered.

2. Will cramdown be sought?    Yes, if votes needed for confirmation are not obtained.

3. Treatment of Secured Non-Tax Claims

### SECURED NON-TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| Northwest Bank | 2 | $347,870.21 | Paid over 20 years at 8% interest |
| Northwest Bank | 2 | $76,986.33 | Paid over 20 years at 8% interest |
| United States Small Business Administration | 3 | $24,765.65 | Paid over 30 years at 8% interest |

4. Treatment of Secured Tax Claims

### SECURED TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|

5. Treatment of Administrative Non-Tax Claims[2]

---

[2] Include all § 503(b) administrative claims

ADMINISTRATIVE NON-TAX CLAIMS

| Name of Creditor* | Amount Owed | Type of Debt** | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| Thompson Law Group, P.C. | $50,000.00 Approximate and estimated (P) | Attorney for the Debtors – legal fees | Upon Court approval of fees, will be partially paid on plan effective date and thereafter at an amount no less than $750/month |
| Trustee | $4,572.00 (estimated) | U.S. Trustee Fees | Will be paid in full prior to or on effective date |

*Identify and Use Separate Line for Each Professional and Estimated Amount of Payment
**Type of Debt (P=Professional, TD=Trade, TX=Taxes)

6.      Treatment of Administrative Tax Claims

ADMINISTRATIVE TAX CLAIMS

| Name of Creditor* | Amount Owed | Type of Debt** | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| None | | | |

7.      Treatment of Priority Non-Tax

PRIORITY NON-TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| None | | | | |

8.      Treatment of Priority Tax Claims[3]

PRIORITY TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| None | | | | |

9.      Treatment of General Unsecured Non-Tax Claims

GENERAL UNSECURED NON-TAX CLAIMS

| Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| US DEPT of HHS, CMS | 4 | $0.00 | |

---

[3] Include dates when any § 507(a)(7) taxes were assessed.

8

| United First, LLC | 4 | $30,585.15 | |
|---|---|---|---|
| U.S. Bank NA dba Elan Financial Services | 4 | $27,070.41 | |
| Flex Telerad, LLC | 4 | $138,517.00 | |
| Navitas Credit Corp. | 4 | $120,403.20 | |
| Rapid Radiology, Inc | 4 | $438,306.90 | |
| Intella PACS n/k/a Emergent Connect | 4 | $47,808.00 | |
| National Mobile X-Ray | 4 | $0.00 | |
| JPMorgan Chase Bank, N.A. | 4 | $46,129.53 | |
| Deanna Lowmaster, CPA | 4 | $1,229.55 | |
| United States Small Business Administration | 4 | $510,826.35 | |
| Highland Capital Corporation | 4 | $770.27 | |
| Highland Capital Corporation | 4 | $14,274.72 | |
| Highland Capital Corporation | 4 | $9,114.24 | |
| Kalamata Capital Group | 4 | $228,081.25 | |
| ODK Capital, LLC | 4 | $122,117.76 | |
| Ascentium Capital | 4 | $12,858.99 | |
| Ascentium Capital | 4 | $6,761.03 | |
| Ascentium Capital | 4 | $73,457.78 | |
| Ascentium Capital | 4 | $36,197.73 | |
| Byline Financial Group | 4 | $40,526.51 | |
| LG Funding LLC | 4 | $265,000.00 | |
| Navitas Credit Corp. | 4 | $46,000.00 | |

10.     Treatment of General Unsecured Tax Claims

GENERAL UNSECURED TAX CLAIMS

| Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| None | | | |

11.     Will Periodic payments be made to unsecured creditors?

Yes __X____ No _____

If so:
Amount of each payment (aggregate to all unsecured claimants): $5,000
Estimated date of first payment: Plan Effective Date
Time period between payments: Annual
Estimate date of last payment: 5 Years from Plan Effective Date
Contingencies, if any: None

State source of funds for planned payments, including funds necessary for capital replacement, repairs, or improvements: Source of funds for plan payments will be derived from Debtor's Income.

9

Other significant features of the plan:
Include any other information necessary to explain this plan:

## V.      Comparison with Chapter 7 Liquidation

If Debtor's proposed plan is not confirmed, the potential alternatives would include proposal of a different plan, dismissal of the case or conversion of the case to Chapter 7.  If this case is converted to Chapter 7, a trustee will be appointed to liquidate the debtor's assets.  In this event, all secured claims and priority claims, including all expenses of administration, must be paid in full before any distribution is made to unsecured claimants.  The Commercial Property real estate market is experiencing strain and the values for Debtor's real properties are estimations.  Until the properties could be brought to market, it would be speculative to assume that the properties in the condition at that time would sell for an amount sufficient to pay all costs of sale, property tax liens, secured claims, administrative fees and have enough funds remaining to pay the unsecured creditor.

One of the reasons Debtor filed its Chapter 11 case was due to issues with receivable collection.  Prior to filing, Debtor had even attempted to outsource receivable collection, at least in part, to third parties.  These third party collectors specialized in the healthcare industry with specific experience with Medicare/Medicaid. Nevertheless, those efforts were not successful.  Instead, Debtor added employees to their receivables department to focus on collecting fees up front and not allowing receivables to linger.  These efforts have been successful and will prove vital and helpful for the reorganized Debtor.

Still, when Debtors case was filed, without having a true estimation or professional valuation of its receivables, and more importantly, their collectability, Debtor greatly overestimated their approximate value at $4,905,000.00.  That gross overvaluation significantly impacted the initial liquidation alternative test contemplation and calculation.  In September 2025, Debtor forwarded its accounts receivable information to Dudley Resources and Peter Saugstad, Chief Asset Recovery Officer.  After multiple communications and a thorough review of the receivables, Dudley resources declined the opportunity believing that it would not benefit the estate.

Earlier in May 2025, Debtor had already started to communicate with Bernstein Burkley about the collection of receivables.  Throughout 2025, Burnstein Burkley representatives, included attorney Shawn McClure worked with Debtor to gather information for evaluation of collections.  Ultimately, in September 2026, Burnstein Burkley also informed Debtor that the vast majority of the receivables, and in particular, the Medicare/Medicaid receivables were uncollectible and valueless and declined representation because it would not be a benefit to the bankruptcy estate, and that was contemplated as a contingency fee relationship.  Debtor was also advised that much of the receivables with their private contracts were secondary insurance billing matters that would not be collectible.

Based upon that process and information obtained from Dudley Resources and Burnstein Burkley regarding the valuation and collectability of its receivables, Debtor amended its Schedule B in on September 26, 2025 at Document No. 255 to indicate that a more accurate valuation of the accounts receivables is $326,054.00.  This valuation has been utilized for the liquidation alternative test valuation provided herein.

Total value of Chapter 7 estate                                                        **$471,154.00**

(See Section III)
1.  Less secured claims (See IV)                                          **$2,216,036.37**
2.  Less exemptions from Schedule C                                    $0.00
3.  Less administrative expenses (See IV)                             $54,572.00

10

4. (estimated and not including costs of sale/liquidation).
5. Less other priority claims (See IV)                                $0.00

Total Amount Available for Distribution to Unsecured Creditors:        $0.00

Divided by total allowable unsecured claims of
      (See Section II C)

Percentage of Dividend to Unsecured Creditors:                        1.12%

Will the creditors fare better under the plan than they would in a Chapter 7 liquidation? Yes

**VI.    Feasibility**

A.    If prepared, Income Statements for Prior 12 Months are available on the Court Docket.
B.    If Prepared, Cash Flow Statements for Prior 12 months are available on the Court Docket.
C.    Attach Cash Flow Projections for Next 12 months.

Estimated amount to be paid on effective date of plan, including administrative expenses.

$15,021.50

Show how this amount was calculated.

$10,000.00    Administrative Class  - Estimated
$5,021.50     Monthly payments to creditors

What assumptions are made to justify the increase in cash available for the funding of the plan?  Debtor anticipates a significant increase in wedding and events revenue.

Will funds be available in the full amount for administrative expense on the effective date of the plan? Unknown at this time.  From what source?  See above.  If not available, why not and when will payments be made? Debtor's Counsel is holding $10,000.00 in escrow per retention in this matter.

**VII.   Management Salaries**

MANAGEMENT SALARIES

| Position/Name of Person Holding Position | Salary at Time of Filing | Proposed Salary (Post-Confirmation) |
|---|---|---|
| Jamie Bostard, President/CEO | $191,000.00 annually | $191,000.00 annually |

**VIII.  Identify the Effect on Plan Payments and Specify Each of the Following:**

1.    What, if any, Litigation is pending?

| Caption of Suit and Case Number | Nature of Proceedings | Court of Agency Location | Status or Disposition |
|---|---|---|---|

11

| | | | |
|---|---|---|---|
| Express Mobile Diagnostic Services, LLC vs. U.S. Small Business Administration Case No. 2026-02018 | Adversary | United States Bankruptcy Court | Pending |
| Express Mobile Diagnostic Services, LLC vs. Kalamata Capital Group Case No. 2026-02021 | Adversary | United States Bankruptcy Court | Pending |
| Express Mobile Diagnostic Services, LLC vs. ODK Capital LLC Case No. 2026-02023 | Adversary | United States Bankruptcy Court | Pending |
| Express Mobile Diagnostic Services, LLC vs. Navitas Credit Corp. Case No. 2026-02025 | Adversary | United States Bankruptcy Court | Pending |

2.      What, if any, Litigation is Proposed or Contemplated? Adversary proceedings to determine dischargeability.

**IX.     Additional Information and Comments**

**X.      Certification**

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

Date:   February 20, 2026                    /s/Brian C. Thompson
                                             Brian C. Thompson, Esquire
                                             PA-91197
                                             THOMPSON LAW GROUP, P.C.
                                             301 Smith Drive, Suite 6
                                             Cranberry Township, PA 16066
                                             (724) 799-8404 Telephone
                                             (724) 799-8409 Facsimile
                                             bthompson@thompsonattorney.com

12